We only have two cases for argument this morning. The first is FLOORPRO INC v. United States, Ms. Kirshner. May it please the Court, two fundamental rules were applicable in the determination of whether the Court of Federal Claims possessed jurisdiction of this matter. The first was that a cause of action for breach of contract accrues and the statute of limitations begins to run at the time of the breach. And that the time of the breach is determined by the time at which the government's performance is due and the government failed to perform. Let me ask you a side issue kind of. In the first appeal, could we have transferred this case to the Court of Federal Claims? And if we could have, would that have kind of resolved all of this issue? I vaguely recall that the government took the position there, and I may be wrong, that transfer was not appropriate or not allowed. Your Honor, I don't recall whether that question arose. To put that aside, I'm not sure that there's any statute that enables the transfer. I'm not aware of any statute. There would have to be a statute that would apply that would enable the Court to have transferred it to the Court of Federal Claims. I'm not aware of any statute that enables that. Well, if transfer was at all on the table, would we have had to send it back to the Board, which then would have transferred it to the Court of Claims? Is that what the problem was? I do recall an argument, the government telling us that transfer would not work. That could very well be. I do not recall. I'm not disagreeing. The Board does not have any jurisdiction, any power to transfer to the Court of Federal Claims. That's very, very clear under the Contracts Disputes Act. The Court of Federal Claims has power to take cases from the Board in certain circumstances. But the Board, under the Contracts Disputes Act, has no ability to transfer. And I do not know of any statute that enables the transfer from this Court to the Court of Federal Claims. To go back to the rule that the statute of limitations begins to run at the time of the breach, there was no dispute in this case, and certainly there's no dispute today, as to when the breach occurred. The Court of Federal Claims determined, quote, at the precise moment that the government electronically paid GM&W by crediting its bank account with the payment, a breach of contract occurred. That's in its opinion at 98 Federal Claims, at page 151. And what date was that? That is the merits decision. No, but what date is the date that he did? Sorry, I misunderstood. The Court of Federal Claims also determined that. It determined that occurred on July 17, 2002. That's in its opinion on the merits at 98 Federal Claims, at page 146. It would be at the appendix at page 8. But ultimately, as I recall, its conclusion was that the trigger date was October 2004, right? That's correct. Okay. So we cannot rely upon the rule that the statute of limitation begins to run at the time of the breach. The real dispute in this case dealt with the accrual suspension rule. And as this court pointed out, in homes where the complaint is filed more than six years after the time of the breach, in those circumstances, the court can go on and consider the accrual suspension rule. And that's where the real dispute was in this case. Under the accrual suspension rule, there are two prongs. The first asks whether the government has concealed its actions such that the plaintiff is not aware of its actions. There was never any discussion or controversy concerning whether the government had concealed its actions in this case. The government, through correspondence with FLORPRO, let FLORPRO know exactly what had happened. For example, there was a letter in July of 2002 where the government told FLORPRO that GM&W, the prime contractor, had been paid directly by electronic transfer. And there was also a letter from the government in August of 2002 where the government is responding to a letter from FLORPRO. And FLORPRO has asked, who should we sue? And the government responds, you should sue GM&W and the government doesn't have any responsibilities to you in this situation. So the concealment rule was not really at issue. The only issue was determining the point at which FLORPRO knew or should have known of the facts, that we put it on inquiry notice that it had a potential claim against the government. And it's our contention, and it was our contention at the Court of Federal Claims, that that occurred in the summer of 2002. In the summer of 2002, FLORPRO had all of the information that enabled it to know that it had a potential claim against the government. In the summer of 2002, FLORPRO knew the contract had been modified through a modification that provided for the issuance of a two-party check. When you say summer, you mean August 9? Well, it actually knew that fact in July, but summer I'm saying July and August of 2002. In July... August 9 is when the government sent that letter to FLORPRO. Yes, there was a letter on August 9. There was also an earlier letter in July. But on August 9, the government responded to FLORPRO, where FLORPRO had asked, who should we sue? Should we sue the base? Should we sue DFAST? And the government said, you should sue GM&W. And the government has no liability to FLORPRO in the circumstances of this case. FLORPRO understood what that letter meant based on its actions. It then submitted what it thought was a claim under the Contracts Disputes Act to the contracting officer, asserting that it was due payment and that payment had not been made to it. And then the government refused again to make payment in response. And then FLORPRO filed an action against the Navy at the board, the Board of Contract Appeals. So clearly it had all of the information that it needed to bring suit against the government. Ms. Christian, what's striking about this case is, given the amount of money at stake, which is relatively slight in comparison to most of the cases we have, this person has twice won at the lower court level on the merits of his case, right? And we're still here on appeal now, second appeal to this court, twice the bodies below the board and then the Court of Claims has considered it. It's a little striking that the government continues to press this issue. Is there a legal principle at stake? Is that the basis for doing this? Yes, clearly. The legal principle at stake is that there's no waiver of sovereign immunity in this case and that the statute of limitations is a condition that Congress set on the authority and jurisdiction of the Court of Federal Claims. And that limitation needs to be respected and was not respected in the circumstances of this case. The Court of Federal Claims went forward, assumed jurisdiction where there was none and provided no explanation for its determination that it was going to use the October 5, 2004 date as the time when the cause of action accrued. It looks like the court was thinking equitable tolling. Yes, it does look like that. And it clearly doesn't have any authority to equitably toll the statute of limitations. As the Supreme Court has stated and this court has also recognized. It does look like that was the rationale because it stated in its opinion that FLORPRO had been pursuing this matter against the government for more than seven years. Well, that is precisely the point. It knew that it had a claim against the government more than seven years before it filed suit in the Court of Federal Claims. And at that point in time, the Court of Federal Claims had no jurisdiction. I would point out that in terms of the court's concern with the equities of the matter, that when suit was filed at the board, the government immediately responded and sought an order to show cause why the matter shouldn't be dismissed by the board for lack of jurisdiction. Pointing out the lack of authority that the board had to go forward. And at that time, there still was time for FLORPRO to bring suit at the Court of Federal Claims should it have wished to do so. So this was a decision ultimately made by FLORPRO to go forward in the wrong forum. Back to the October 2004 date, which we think was selected by the Court of Federal Claims and was clearly wrong. The court did not provide any explanation for why it chose that date. It did not identify any new facts that FLORPRO learned on October 2004 that it did not have earlier that would have been necessary for it to bring suit against the government. The October 2004 date is simply the date that the government filed a brief in opposition to a motion for summary judgment at the board. FLORPRO had moved for summary judgment. The government on October 4, excuse me, in October of 2004, filed its opposition to summary judgment. There were no new facts at that time shown in the brief. All of the necessary facts had been fled in the complaint and were known previously. I think I've gone through those before. The fact that there was a joint modification providing for the two-party check to issue, that there had been a payment to GM&W crediting its bank account, and a refusal by the government to pay FLORPRO directly. You left out the word despite. Excuse me. Despite that modification, there had been a payment directly to GM&W. Yes, yes. I think that's the bone that sticks in the throat all the way up and down the line. The government agreed to do something to modify that payment method and then went ahead and defense finance accounting went ahead and paid them anyway, and they skipped. That's what the record looks like. So FLORPRO is left holding that bag after having done the right thing. It looks like it just irritated the court below, so they tried to come up with some hard facts, make bad law. I do not disagree, Your Honor. We're not here disputing the merits of the case. We've only raised one issue, which is the limitations on the Court of Federal Claims jurisdictions and the limited waiver of sovereign immunity that Congress provided in the circumstances of this case. Ms. Kushner, you're into your rebuttal time. You have two minutes. I just want to say that. I misunderstood. Mr. Del Sordo. Good morning, Your Honor. Good morning. May it please the Court, James Del Sordo for the appellate. As the Court has noted, this case is on appeal from the Court of Federal Claims in order to enforce Judge Smith's decision finding that he had jurisdiction to hear our claim and then entering judgment in favor of our claim. To sort of work backwards and address Ms. Kushner, one of her last points where she said that there was no explanation by Judge Smith as to why he chose the October 5, 2004 date. That's totally untrue. He says in his decision citing to our argument before him orally and in our briefs that October 5, 2004 was when the government for the first time walked away from Modification I as opposed to saying, sorry, we paid this other person by mistake. But they had never... Hadn't the government already said in writing, we're not going to pay you back two years before? They had said, Your Honor, that we had paid this person, sorry. They had never said, we're never going to pay you. And they had never said, you have no independent rights as a third-party beneficiary. So it was their statement in October of 2004 when they said, oh, and by the way, that modification is meaningless and you have no rights under it. So that is... 2004 was after you had already filed the claim based on this particular cause of action, right? Yes. So if we accept this proposition, doesn't it effectively eliminate the statute of limitations? No. I mean, we're saying the clock can start to run. The trigger date can be after you've already filed the cause of action? Well, presumably our cause of action was too early in 2002. But the case was never dismissed because the cause of action was premature. It was too early, right? No, the government never raised that issue. And the ASBCA first was addressed with a jurisdictional motion from the government whereby the government said that we couldn't sue because we didn't have privity of contract and that we had to have a sponsor a claim through GM&W. The ASBCA ruled against that, found that we had third-party beneficiary rights, and it was after that that the government defended and said, no, this mod didn't give them third-party beneficiary rights. Mr. Del Sordo, at A120, there's a letter dated December 17, 2002, that says the letter is in response to the reference above requesting a final decision. Based on the enclosed, the government does not have a contract with FlorPro. There is no requirement for the government to honor your request for a final decision. Right. Isn't that a no? It's a no that we don't have to give you a final decision. It's not a no that we never have to pay you. In fact, the government had, up until that point, had a modification, but it wasn't until October of 2004 that they said that modification was meaningless. We didn't, as opposed to saying we paid the wrong person, in theory the government should have honored the modification subsequently and issued a third-party check. Okay. A118. While we understand your frustration in not being paid for completed work, unfortunately our ability to facilitate such payment is extremely limited. And it goes on at the bottom, as the government does not possess privity of contract with FlorPro or any other subcontractor, the actions described above fulfill the extent of the government's obligations. I am skipping a little bit. Any recourse on your behalf must be obtained from GM&W through the civil court system. It sure looks like they're saying no to you. They're also saying we're putting in an investigation through the NCIS. Yes. It's a criminal investigation. It's a criminal investigation. It's still holding open the door that potentially my client could get paid under the modification. If they find out that something- How? I don't know what the results of the investigation might have shown. The government is not saying that at that point if that investigation turns up something- Is there a law that says if the NCIS finds fraud that the government will then pay your client? I have no idea, Your Honor. Well, you should. No, but Your Honor, the point is that if the government's criminal investigation system finds something had occurred, there's nothing to prevent the government from, as a means of reparation, paying my client under the modification. You have a tort even in it. I think it's because the modification still exists. The contracting officer never said that the modification was issued in error, that we're not going to honor you as a third-party beneficiary. If we reject the argument with respect to the trigger date, what do you have left with respect to jurisdictional questions? Well, I think Judge Smith is correct in what he's saying, that the point of the statute of limitations is to protect the government from stale claims, and clearly this isn't a stale claim. It's been actively litigated from the beginning. Do you think John R. Sandman Gravel still allows us the discretion to apply an equitable tolling? I think it does, because the Supreme Court said in Irwin that equitable tolling does exist. It's just that John R. Sandman said that the particular statute is not amenable to equitable tolling. That's the statute we're at now, right? Right. It's 2501, so they said it's not amenable to equitable tolling. Not amenable doesn't mean you can't ever do it. I don't think the Supreme Court said no way in any circumstances are you permitted to have equitable tolling. They say it's just not amenable to it. And I'll point to you that— Or did you think they were limited to the facts in that case, that it wasn't amenable to equitable tolling under the facts of that case and that's the only limitation? Well, I'll address that. John R. Sandman does a long discussion of equitable tolling and also of the Tucker Act going back to the Civil War as the purposes of it. And it talks about instances where the court has said no equitable tolling and it talks about how in those cases where they did not allow equitable tolling, it's because the statute had never permitted it or had never been permitted within the context of that statute. And it cites the five cases, and we've put them in a footnote in our brief on page 9. And if you actually go back and read those cases, in those instances they argue exactly against what is going on. In those cases the people had not diligently pursued their claims. You had in fact one where the court did find jurisdiction from 1896. So I think to a certain extent there's been a bit of a mythology built up around equitable tolling under John R. Sand that in reality the court is saying the reason we've made this decision is because in all those instances those litigants did not actually pursue their claims diligently. They had started an administrative process and then blown it off but they hadn't done anything for six years. So I think there is, in limited circumstances, the court has the authority where it's appropriate to recognize that a litigant has permanently pursued their causes of action and the case law does not say never know how you may not do this. It just says it's not amenable to equitable tolling, which I think gives judges discretion if they find an appropriate case, as obviously Judge Smith found that justice can be done, as Judge Smith said. Similarly, I don't agree. I think we already covered that about the, as Ms. Kirchner said, it's not the nonpayment that triggers, but Judge Wallach and I have already discussed that at length. As to Judge Prost's issue about the transfer, there is no statute that talks about what you can do to transfer. But I think as a general matter, courts have authority to manage their dockets, to move cases where appropriate. I do recall... You didn't seek a transfer in the earlier case. No. Frankly, we thought we had jurisdiction at the ASPCA, so it never occurred to us that it should be transferred. That goes similarly to the issue of why didn't we file a protective cause of action at the Court of Federal Claims. Because one, we know that you can't file a second cause of action that the Court of Federal Claims would normally throw it out because you've already chosen your form at the Board. So I've never actually heard of a case being filed at the Board and then someone also filing something at the Court of Federal Claims and asking for it to be stayed, because typically they're very clear that you've chosen your form, you've got to stick with the form that you've chosen. But I don't think... I know of no reason that the Court could not, if it deems necessary, transfer the case. I agree, I don't think the Board can transfer the case if they didn't, in theory, dismiss one without prejudice to allow a party to bring it at the Court of Federal Claims. But it's not a matter where the Federal Circuit couldn't order that as a measure. There's no statute saying you can, but you do have general authority to... Well, it's a little late for that now. Well, I know that, but you have raised the issue. No, I appreciate that, I appreciate that. Unless you have any further questions, I don't... Thank you. On the transfer question, the statute is 28 U.S. Code 1631. That statute allows for transfer from one court to another, where a civil action is filed in a court. It would not apply in the circumstances of this case because the first action, the forecourt action, was filed at the Board. So why couldn't we transfer it to the Court of Claims? Because this statute only allows transfer whenever a civil action is filed in a court, as defined in Section 610 of this title, and the Board is not a court. So because the action had been filed at the Board, it could not be transferred by the Federal Circuit. The second point I just want to make on the election doctrine that was raised by Floor Pro. The election doctrine only applies to a claim under the Contracts Disputes Act and provides for Contracts Disputes Act claim that you elect whether you file at the Board or whether you file at the Court of Federal Claims. What we're saying here is that they could have filed suit in the Court of Federal Claims because they were asserting third-party beneficiary type of claim and not a CDA claim. We thank both counsel and the case is submitted.